## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| K.L., by and through her next friend, JIM LADLIE, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Complaint No: |
| MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, BOARD OF DIRECTORS, | ) ) ) ) | |
| Defendant. | ) ) ) | |

### VERIFIED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

Plaintiff K.L., a Missouri high school student, above the knee amputee, and para-athlete, by and through her next friend, Jim Ladlie (hereinafter "Plaintiff") brings this Verified Complaint against the Missouri State High School Activities Association Board of Directors (hereinafter "Defendant") seeking injunctive, monetary, and declaratory relief under Title II of the Americans with Disabilities Act (hereinafter the "ADA") and Section 504 of the Rehabilitation Act (hereinafter "Section 504"), and alleges as follows:

### I. JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (1980) and 1343.

2. This Court has jurisdiction over Plaintiff's request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is appropriate in this District under 28 U.S.C. § 1391(b), because the events and omissions giving rise to this Complaint occurred in this District.

## II. PARTIES

A.      Plaintiff

4.      Plaintiff, seventeen years old, is a junior at Troy-Buchanan High School ("Troy") in

        Troy, Missouri.

5.      Plaintiff resides in Troy, Missouri.

6.      Plaintiff is an above the knee amputee.

7.      Plaintiff was born with a venous malformation that involves her entire left hip and leg

        known as Genuine Diffuse Phlebectasia of Bockenheimer (also known as

        "Bockenheimer's syndrome").

8.      Bockenheimer's syndrome impaired and/or impairs Plaintiff's ability to ambulate.

9.      In 2004, when Plaintiff was in first grade, she began to experience tremendous pain due

        the deterioration of the cartilage in her left knee brought on by the Bockenheimer's

        syndrome.

10.     In 2008, Plaintiff's elementary school (in the Troy-Buchanan School District) first found

        her eligible for a Section 504 Plan in order to gain equal access and benefits from school

        programs and services.

11.     In 2009, when Plaintiff was in the sixth grade, she began using an electric scooter to

        assist with mobility.

12.     On June 17, 2011, Plaintiff underwent an above the knee surgery at St. Louis Children's

        Hospital in St. Louis, Missouri to remove the knee that caused debilitating pain.

13.     Plaintiff's Section 504 Plan was updated in September 2014 to provide continued

        accommodations for her impairment, including the use of crutches during the school day

and extended time between classes. A copy of Plaintiff's September 2014 Section 504 Plan is filed separately under seal and incorporated herein as Exhibit A.

14.   Plaintiff is a returning member of the Troy track and field team. Plaintiff uses a racing chair to race in the 100m, 200m, and 400m events. A photo of Plaintiff in her racing chair is filed separately under seal and incorporated herein as Exhibit B.

15.   Plaintiff is a member of the National Honor Society with a GPA of 3.74.

16.   Plaintiff is a Junior Officer with the Troy Future Farmers of America chapter and Vice-President of the Rachel's Challenge Troy chapter, an anti-bullying organization.

17.   Plaintiff is also active in competitive sled hockey and triathlons.

18.   Plaintiff is the 2014-2015 National Patient Ambassador for the Shriners Hospitals for Children.

19.   Plaintiff's future goal is to attend a college or university that offers scholarship opportunities to para-athletes and major in a healthcare field.

B.   Defendant

20.   Defendant is a voluntary, unincorporated association comprised of over 500 junior and senior high schools in Missouri.

21.   Defendant's administrative body is comprised of ten, elected board members.

22.   Defendant is governed by a constitution and by-laws, which are published in an annual Official Handbook. The 2014-2015 Official Handbook is incorporated herein as Exhibit C.

23.   Defendant adopts standards for the regulation and supervision of interscholastic activities and contests, including athletics. (Exhibit C at 16).

### III. FACTUAL ALLEGATIONS

24.     Plaintiff meets the student essential eligibility and academic requirements promulgated
        by Defendant. (See Exhibit C at 38, 40).

25.     Plaintiff provides and maintains her own racing chair.

26.     Plaintiff practices with her track and field team and is held to the same standards required
        of her teammates.

27.     On average, Plaintiff takes 22.09 seconds to compete in a 100m race, 42.03 seconds to
        compete in a 200m race, and one minute and 25.00 seconds to compete in a 400m race.
        There is generally only a ten-second difference between her 100m and 200m race times
        and those of other athletes and no time difference for the 400m race. It takes Plaintiff the
        same amount of time as other athletes to get on and off the track.

28.     However, under the current track and field guidelines enacted by Defendant, Plaintiff is
        not guaranteed the opportunity to participate in regular season meets. Opposing teams
        must consent to Plaintiff's participation.

29.     In 2013, Plaintiff was denied participation in one of the regular season meets. During the
        2014 season, some host schools delayed their responses in deciding whether to allow
        Plaintiff to participate, causing wait times that were both insulting and hurtful.

30.     Even when Plaintiff is allowed to race, she is often placed in a heat by herself, racing in
        an exhibition capacity that makes her feel more like a spectacle than a member of the
        team.

31.     Plaintiff is not allowed to earn points for her team or qualify for state or district
        championships.

32.     Under Defendant's current practice, Plaintiff is not treated as a full-fledged member of her track and field team, nor does she enjoy the same environment of inclusiveness as her counterparts.

33.     Unable to earn points or compete at the championship level, Plaintiff is far less likely to receive a benefit afforded to other athletes: the opportunity to vie for athletic scholarships.

34.     Per article IV of Defendant's constitution, Defendant has "the authority to organize and direct such preliminary tournaments, meets, or games as necessary to select teams or individuals qualified to compete in state contests and shall administer such contests." (Exhibit C at 22).

35.     To foster her inclusion as a full-fledged member of the track and field team, Plaintiff requested that Defendant modify its track and field program in accordance with recommendations from the founder and Executive Director of the Disabled Athlete Sport Association, Kelly Behlmann, as adapted from the Louisiana High School Athletic Association. The requested modification is incorporated herein as Exhibit D.

36.     Under Plaintiff's requested modification, para-athletes would compete in the 100m, 200m, 400m, and 800m races against other para-athletes. The athletes would be eligible for regular season, district, and state championship meets. (Exhibit D at 23.7.1, 23.7.10).

37.     Under Plaintiff's requested modification, para-athletes would earn team and individual points, with the amount of points earned dependent upon the para-athlete's place and the number of competitors. If a para-athlete competes alone, he or she would have to meet qualifying standards specific to his or her gender and event in order to earn a point. (Exhibit D at 23.7.5, 23.7.8a).

38.    Under Plaintiff's requested modification, if a para-athlete's team ties or wins over a team without a para-athlete, and the para-athlete's points caused the tie or win, the other team would be declared champion. The para-athlete's team would be named co-champion. (Exhibit D at 23.7.6).

39.    Under Plaintiff's requested modification, Plaintiff would be able to compete at every level of competition without unfairly disadvantaging schools without para-athletes.

40.    Defendant has refused to modify its track and field program despite the reasonableness of Plaintiff's request.

41.    Defendant offers that it will "closely monitor" the number of para-athletes and schools involved in 100m and 400m races for a two-year period. Defendant also offers that it will consider establishing a state championship competition in the future, but that, too, requires at least a two-year waiting period.

42.    While the plan Defendant has outlined may benefit younger para-athletes, Plaintiff will no longer be in high school in two years. Additionally, Defendant is not offering every event Plaintiff competes in.

## IV. VIOLATION OF THE ADA

43.    Plaintiff incorporates and restates each of the above paragraphs.

44.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 121321(2).

45.    This Court has determined that Defendant is a "'public entity' subject to the provisions of the ADA." *Pottgen v. MSHAA*, 875 F.Supp. 654,662 (E.D. Mo. 1994).

46.    Due to Plaintiff's disability, Defendant has excluded Plaintiff from any real participation in and denied her the benefits of its programs and activities by refusing to make reasonable modifications to its track and field program, as required under 28 C.F.R. § 35.130(b)(7) (2011).

47.     Defendant has denied Plaintiff "meaningful access" to its programs and activities, as articulated in *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999).

48.     Defendant has not administered programs and activities to Plaintiff in the most integrated setting appropriate to her needs, as required under 28 C.F.R. § 35.130(d).

49.     Defendant's two-year plan for considering para-athletic events and championship competition imposes "eligibility criteria that tends to screen [Plaintiff] out" from "fully and equally enjoying" track and field, in violation of 28 C.F.R. § 35.130(b)(8).

50.     As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including needless isolation and segregation.

## V. VIOLATION OF SECTION 504

51.     Plaintiff incorporates and restates each of the above paragraphs.

52.     Plaintiff is an "individual with a disability" as defined in 29 U.S.C. § 705(20).

53.     Plaintiff is "otherwise qualified" as defined by *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979) and *Simon v. St. Louis County,* 656 F.2d 316, 321 (8th Cir.), *cert. denied,* 455 U.S. 976 (1981).

54.     Defendant receives federal financial assistance for its programs and activities.

55.     Solely by reason of Plaintiff's disability, Defendant excluded Plaintiff from participation in, denied Plaintiff the benefits of, and subjected Plaintiff to discrimination in its programs and activities.

56.     Defendant failed to administer programs and activities in the most integrated setting appropriate to Plaintiff's needs, in violation of 28 C.F.R. § 41.51(d).

57.     As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including needless isolation and segregation.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant, providing the following relief:

a.   Injunctive relief ordering Defendant to implement Plaintiff's requested modification, allowing her to earn individual and team points; to compete with no requirement for consent from opposing teams; and to gain eligibility to compete at district and state meets;

b.   Monetary relief, exclusive of costs and interest;

c.   Declaratory judgment that Defendant's actions, omissions, policies, and practices violate Plaintiff's rights under the ADA and Section 504;

d.   Award interest, costs, and reasonable attorney's fees; and

e.   Issue such other and further relief as the Court deems appropriate.

*Amanda Anthony*

Amanda Anthony # 57834MO
Susan Eckles # 38641MO
Kiara Drake # 67129MO
Kaitlyn Robinson # 67047MO
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Missouri 63114
314-785-1702 (x228)
314-785-1707 (fax)
Amanda.anthony@mo-pa.org
Susan.eckles@mo-pa.org
Kiara.drake@mo-pa.org
Kaitlyn.robinson@mo-pa.org

## VERIFICATION

Jim Ladlie, next friend of Plaintiff K.L., being duly sworn, declares:

I have read the foregoing Complaint. The facts and allegations contained therein are true

to my own knowledge, or, if stated to be on information and belief, I believe them to be

true.

_Jim Ladlie_

Jim Ladlie, next friend of Plaintiff K.L.

Subscribed and sworn to before me this _23rd_ day of _April_, 2015.

_Corinne Tinker_

Notary Public

State of _Missouri_
County of _St. Charles_
My commission expires: _7/19/15_

CORINNE L. TINKER
Notary Public-Notary Seal
State of Missouri, St Charles County
Commission # 11138507
My Commission Expires Jul 19, 2015

9