IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| K.L., by and through her next friend, JIM LADLIE, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No: 4:15CV679 HEA ) |
| MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, BOARD OF DIRECTORS, | ) ) ) ) ) |
| Defendant. | ) |

**AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT**

Plaintiff K.L., a Missouri high school student, above the knee amputee, and para-athlete, by and through her next friend, Jim Ladlie (hereinafter "Plaintiff") brings this Complaint against the Missouri State High School Activities Association Board of Directors (hereinafter "Defendant") seeking injunctive, monetary, and declaratory relief under Title II of the Americans with Disabilities Act (hereinafter the "ADA") and Section 504 of the Rehabilitation Act (hereinafter "Section 504"), and alleges as follows:

**I. JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (1980) and 1343.

2. This Court has jurisdiction over Plaintiff's request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is appropriate in this District under 28 U.S.C. § 1391(b), because the events and omissions giving rise to this Complaint occurred in this District.

## II. PARTIES

A. <u>Plaintiff</u>

4. Plaintiff, seventeen years old, is a junior at Troy-Buchanan High School ("Troy") in Troy, Missouri.

5. Plaintiff resides in Troy, Missouri.

6. Plaintiff is an above the knee amputee.

7. Plaintiff was born with a venous malformation that involves her entire left hip and leg known as Genuine Diffuse Phlebectasia of Bockenheimer (also known as "Bockenheimer's syndrome").

8. Bockenheimer's syndrome impaired and/or impairs Plaintiff's ability to ambulate.

9. In 2004, when Plaintiff was in first grade, she began to experience tremendous pain due the deterioration of the cartilage in her left knee brought on by the Bockenheimer's syndrome.

10. In 2008, Plaintiff's elementary school (in the Troy-Buchanan School District) first found her eligible for a Section 504 Plan in order to gain equal access and benefits from school programs and services.

11. In 2009, when Plaintiff was in the sixth grade, she began using an electric scooter to assist with mobility.

12. On June 17, 2011, Plaintiff underwent an above the knee surgery at St. Louis Children's Hospital in St. Louis, Missouri to remove the knee that caused debilitating pain.

13. Plaintiff's Section 504 Plan was updated in September 2014 to provide continued accommodations for her impairment, including the use of crutches during the school day

and extended time between classes. A copy of Plaintiff's September 2014 Section 504 Plan is filed under seal and incorporated herein as Exhibit A.

14. Plaintiff is a returning member of the Troy track and field team. Plaintiff uses a racing chair to race in the 100m, 200m, and 400m events.

15. Plaintiff is a member of the National Honor Society with a GPA of 3.74.

16. Plaintiff is a Junior Officer with the Troy Future Farmers of America chapter and Vice-President of the Rachel's Challenge Troy chapter, an anti-bullying organization.

17. Plaintiff is also active in competitive sled hockey and triathlons.

18. Plaintiff is the 2014-2015 National Patient Ambassador for the Shriners Hospitals for Children.

19. Plaintiff's future goal is to attend a college or university that offers scholarship opportunities to para-athletes and major in a healthcare field.

B. Defendant

20. Defendant is a voluntary, unincorporated association comprised of over 500 junior and senior high schools in Missouri.

21. Defendant's administrative body is comprised of ten, elected board members.

22. Defendant is governed by a constitution and by-laws, which are published in an annual Official Handbook. The 2014-2015 Official Handbook is incorporated herein as Exhibit B.

23. Defendant adopts standards for the regulation and supervision of interscholastic activities and contests, including athletics. (Exhibit B at 16).

## III. FACTUAL ALLEGATIONS

24. Plaintiff meets the student essential eligibility and academic requirements promulgated by Defendant. (See Exhibit B at 38, 40).

25. Plaintiff provides and maintains her own racing chair.

26. Plaintiff practices with her track and field team and is held to the same standards required of her teammates.

27. On average, Plaintiff takes 22.09 seconds to compete in a 100m race, 42.03 seconds to compete in a 200m race, and one minute and 25.00 seconds to compete in a 400m race. There is generally only a ten-second difference between her 100m and 200m race times and those of other athletes and no time difference for the 400m race. It takes Plaintiff the same amount of time as other athletes to get on and off the track.

28. However, under the current track and field guidelines enacted by Defendant, Plaintiff is not guaranteed the opportunity to participate in regular season meets. Opposing teams must consent to Plaintiff's participation.

29. In 2013, Plaintiff was denied participation in one of the regular season meets. During the 2014 season, some host schools delayed their responses in deciding whether to allow Plaintiff to participate, causing wait times that were both insulting and hurtful.

30. Even when Plaintiff is allowed to race, she is often placed in a heat by herself, racing in an exhibition capacity that makes her feel more like a spectacle than a member of the team.

31. Plaintiff is not allowed to earn points for her team or qualify for state or district championships.

32. Under Defendant's current practice, Plaintiff is not treated as a full-fledged member of her track and field team, nor does she enjoy the same environment of inclusiveness as her counterparts.

33. Unable to earn points or compete at the championship level, Plaintiff is far less likely to receive a benefit afforded to other athletes: the opportunity to vie for athletic scholarships.

34. Per article IV of Defendant's constitution, Defendant has "the authority to organize and direct such preliminary tournaments, meets, or games as necessary to select teams or individuals qualified to compete in state contests and shall administer such contests." (Exhibit B at 22).

35. Defendant currently modifies its girls' and boys' programs, allowing students to compete on teams comprised of the opposite gender when there are no teams specific to their genders, per Section 3.20 of its bylaws. (Exhibit B at 84).

36. Additionally, Defendant enacts separate track and field qualifying standards for boys and girls and different standards for boys and girls in varying classes of competition. 2015 Track and Field Manual at 5. The 2015 Track and Field Manual is incorporated herein as Exhibit C.

37. Defendant also modifies its athletic events when students with visual impairments compete against other students with visual impairments. Section 2.11 of Defendant's bylaws provides that Defendant's "essential requirements of eligibility" in Section 2.1 can be waived when students from the Missouri School for the Blind compete against students from other schools for blind students. (Exhibit B at 38).

38. Under Section 2.11 of its bylaws, Defendant is "authorized to waive provisions of the By-Laws to accommodate programs of the Missouri School for the Deaf and the Missouri School for the Blind that are otherwise restricted because of the nature of the handicap of the student involved." (Exhibit B at 38).

39. To foster her inclusion as a full-fledged member of the track and field team, Plaintiff requested that Defendant modify its track and field program based on recommendations from the founder and Executive Director of the Disabled Athlete Sport Association, Kelly Behlmann, as adapted from the Louisiana High School Athletic Association. However, Plaintiff is open to the establishment of other operating standards.

40. Plaintiff requests modifications to the existing events in which she currently participates, allowing her to race as a full member of her track and field team, rather than an exhibition.

41. Plaintiff requests the implementation of qualifying standards for track and field racing chair competitors that will allow her to compete for points for herself and for her track and field team in all meets sanctioned by Defendant.

42. Plaintiff requests the opportunity to compete at championship meets upon her fulfillment of qualifying standards for track and field racing chair competitors.

43. Plaintiff does *not* request to race alongside athletes without disabilities in head-to-head competition. Additionally, Plaintiff does *not* request the creation of a new track and field program; instead, she requests modifications to the operation of the races she currently participates in, which will give them actual weight.

44. Defendant has refused to grant Plaintiff's request despite its reasonableness.

45. Instead, Defendant recently instituted 100m and 400m exhibition races for para-athletes. It will then "closely monitor" the number of para-athletes and schools involved in those races for a two-year period and consider establishing scoring events and state championship competition. Defendant's Track and Field Advisory Committee also suggested the inclusion of 200m, 800m, 1600m, 3200m, shot put, discus, and javelin as additional exhibition events for para-athletes next season.

46. Defendant is considering plans to enact the very modifications Plaintiff requests; Plaintiff and Defendant disagree on the timing. Plaintiff will no longer be in high school in two years.

47. Younger para-athletes will benefit from the conversion from exhibition events to scoring and championship-level events, but an individualized inquiry necessitates an examination of Plaintiff's specific circumstances. Because Defendant's current implementation strategy points to the reasonableness of Plaintiff's request, Plaintiff should have the opportunity to compete as a full member of her track and field team.

### IV. VIOLATION OF THE ADA

48. Plaintiff incorporates and restates each of the above paragraphs.

49. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 121321(2).

50. This Court has determined that Defendant is a "'public entity' subject to the provisions of the ADA." *Pottgen v. MSHAA*, 875 F.Supp. 654,662 (E.D. Mo. 1994).

51. Due to Plaintiff's disability, Defendant has excluded Plaintiff from any real participation in and denied her the benefits of its programs and activities by refusing to make reasonable modifications to its track and field program, as required under 28 C.F.R. § 35.130(b)(7) (2011).

52. Defendant has denied Plaintiff "meaningful access" to its programs and activities, as articulated in *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999).

53. Defendant has not administered programs and activities to Plaintiff in the most integrated setting appropriate to her needs, as required under 28 C.F.R. § 35.130(d).

54. Defendant's two-year plan for considering para-athletic scoring events and championship competition imposes "eligibility criteria that tends to screen [Plaintiff] out" from "fully and equally enjoying" track and field, in violation of 28 C.F.R. § 35.130(b)(8).

55. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including needless isolation and segregation.

## V. VIOLATION OF SECTION 504

56. Plaintiff incorporates and restates each of the above paragraphs.

57. Plaintiff is an "individual with a disability" as defined in 29 U.S.C. § 705(20).

58. Plaintiff is "otherwise qualified" as defined by *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979) and *Simon v. St. Louis County,* 656 F.2d 316, 321 (8th Cir.), *cert. denied,* 455 U.S. 976 (1981).

59. Defendant receives federal financial assistance for its programs and activities.

60. Solely by reason of Plaintiff's disability, Defendant excluded Plaintiff from participation in, denied Plaintiff the benefits of, and subjected Plaintiff to discrimination in its programs and activities.

61. Defendant failed to administer programs and activities in the most integrated setting appropriate to Plaintiff's needs, in violation of 28 C.F.R. § 41.51(d).

62. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including needless isolation and segregation.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant, providing the following relief:

a. Injunctive relief ordering Defendant to implement Plaintiff's requested modification, requiring Defendant to implement qualifying standards for track and field racing chair competitors that will allow Plaintiff to earn individual and team points, compete with no requirement for consent from opposing teams, and gain eligibility to compete at district and state meets, upon meeting the aforementioned qualifying standards;

b. Monetary relief, exclusive of costs and interest;

c. Declaratory judgment that Defendant's actions, omissions, policies, and practices violate Plaintiff's rights under the ADA and Section 504;

d. Award interest, costs, and reasonable attorney's fees; and

e. Issue such other and further relief as the Court deems appropriate.

____/s/ Kiara N. Drake_____
Amanda Anthony #57834MO
Susan Eckles #38641MO
Kiara Drake #67129MO
Kaitlyn Rausch #67047MO
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Missouri 63114
314-785-1702 (x228)
314-785-1707 (fax)
Amanda.anthony@mo-pa.org
Susan.eckles@mo-pa.org
Kiara.drake@mo-pa.org
Kaitlyn.rausch@mo-pa.org

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by operation of the Court's electronic filing system on all attorneys of records, on this 10th day of November, 2015.

                                                          __/s/ Kiara N. Drake_____
                                                         Kiara N. Drake #67129MO