# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| K. L., by and through her next friend,<br>JIM LADLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 4:15CV679 HEA |
| | ) | |
| MISSOURI STATE HIGH SCHOOL<br>ACTIVITIES ASSOCIATION, BOARD OF<br>DIRECTORS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

On the 26th day of February, 2016, evidentiary hearing was held before this Court on Plaintiff s Motion for Preliminary Injunction, [Doc. No. 61]. Also pending before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 52] and Plaintiff's Motion to Alter or Amend this Court's previous Order and Judgment Granting Defendant's Motion to Dismiss [Doc. No. 46]. The Court now makes the following Findings of Fact and Conclusions of Law.

## Facts and Background

Plaintiff is a student at Troy-Buchanan High School ("TBHS") in Troy, Missouri, within the Eastern District of Missouri. The named "Defendant" in the caption and opening paragraph of Plaintiff s Amended Complaint is the "Board of Directors" of the Missouri State High School Activities

Association (hereinafter referred to as "MSHSAA" or the Association").[1]

According to her Amended Complaint, Plaintiff was born with a venous malformation involving her left leg, known as "Bockenheimer's Syndrome" and underwent surgical removal of her left leg above the knee in 2011. The evidence showed that the Plaintiff is an athlete who is active in extensive racing chair athletics, sled hockey and triathlon competition including use of her racing chair outside of her school with opportunities to compete and display her talent in regional and national competitions with para-athletes from other states. Plaintiff testified that she is returning for her fourth year as a member of the TBHS track team and uses a racing chair in 1OOm, 200m and 400m racing. Plaintiff described her racing chair as 4-5 feet long with three wheels. Plaintiff alleges that on average there is a "ten-second difference" in her 1OOm and 200m racing times but "no time difference" in her 400m race times compared to the performance of non-

---

[1] MSHSAA is an unincorporated voluntary association of Missouri junior and senior high schools, *State Ex Rel Blasé v. Richardson*, 242 SW3d 469, 470-472 (Mo. App. S.D. 2008). Plaintiff has elected to not sue the Association, but sues only the MSHSAA Board of Directors who are before this Court in their official capacities.

competition between non- disabled runners and para-athletes using racing

chairs, the non-disabled runners have undisputed advantage in shorter

distances while the advantage shifts in favor of para-athletes using racing

chairs at longer distances, which makes head to head competition inequitable

and unfair and no evidence was presented to this Court that there is any

recognized method to make such head to head competition equitable and

fair. Plaintiff does not request to race athletes without disabilities in

head-to-head competition in her Amended Complaint. As stated in her

Motion for Preliminary Injunction, "Plaintiff does not request

accommodations requiring her to race directly against able-bodied

racers..." While Plaintiff requests an Order of this Court to receive team

points when she competes, she testified that she also "would rather race

against disabled athletes and get a chance to win" or "by myself."[2]

The hearing testimony and Affidavit of Harvey Richards demonstrate

significant efforts by Defendants to develop future Track and Field

opportunities for Missouri high school students with Adaptive Events for

para-athletes:

---

[2] Accordingly, Plaintiff does not seek modifications for integrated head to head competition with non-disabled athletes. She seeks segregated competition by herself or with para-athletes only, but she seeks integrated scoring of points against teams without para-athletes.

MSHSAA launched an initiative on June 10, 2014 to consider future creation of new District, Sectional and State Series Championship events for the Javelin and Adaptive events for para-athletes in Track and Field. Under this initiative, the Association began monitoring the number of participants and the number of schools involved with Javelin and Adaptive Track and Field events including the 100m dash, 400m dash and shot put during the 2014-2015 regular season for a two-year trial period while considering the feasibility, By-Law changes and multiple procedures and requirements for conducting a future statewide District, Sectional and Championship Series for Adaptive events for para-athletes in Track and Field.

B.    This process formally began with a unanimous recommendation by the MSHSAA Track and Field Advisory Committee to the MSHSAA Board of Directors on June 10, 2014, which was approved by the Board. On December 3, 2014, the Board of Directors approved this topic for discussion with member schools during the Annual Area Meetings in all eight geographical board districts during January, 2015. Following these Area Meetings, the Board of Directors approved their Annual Member School Questionnaire to identify the number of students and schools who may be interested in new Javelin and Adaptive events for para-athletes at MSHSAA District, Sectional and State Track and Field Championships.

C.    On February 25, 2015, MSHSAA Associate Executive Director Harvey Richards released a Power Point presentation to all member schools about the new initiative with Adaptive events for para-athletes with links to resources to identify, equip and coach students in Adaptive events for para-athletes.

D.    At its regularly scheduled meeting on March 11, 2015, the MSHSAA Board of Directors directed the staff to continue in the current direction to introduce new Adaptive Track and Field events to member schools of the Association consistent with established past practices for adding events to the Track and Field District, Sectional and Championship Series. The Board adopted a further resolution inviting Troy-Buchanan High School and

other interested parties to present additional concerns on this subject at the next regularly scheduled Board of Directors Meeting to be held April 10, 2015.

E.    The Javelin and Adaptive events for para-athletes initiative launched by this Association returned to the MSHSAA Track and Field Advisory Committee for further discussion and action at its annual meeting on June 9, 2015. The Advisory Committee recommended the addition of "exhibition" events for the Javelin and Adaptive events for para-athletes, including 100, 200, 400, 800, 1600, 3200, shot put, discus and javelin at the 2016 State Track and Field Championships to be reviewed at the next Advisory Committee meeting for possible inclusion in the 2017 State Track and Field Championships. Competitors for these first ever "exhibition" events will be invited under performance criteria determined by the Advisory Committee and will be recognized with recorded places, medals and marks, but no team points will be scored or awarded in these "exhibitions" for either the Javelin or Adaptive events for para-athletes.

F.    In September and October of 2015, MSHSAA Associate Executive Director Harvey Richards organized and conducted five (5) regional seminars across Missouri regarding para-athlete events for Track and Field at Holt, Columbia, Perryville, Springfield and Lee's Summit, Missouri. Topics included how to identify a para-athlete in schools, facilities and equipment needed, available resources and coach training.

G.    Approximately 25,000 students currently participate in MSHSAA Senior High Track and Field competition. Of this number, approximately 6,000 students (24%), including alternates for relays, advance to participation at the final site Championships in Jefferson City, Missouri.

H.    Troy Buchanan High School is a current member of the Association and competes in Class 5 Track and Field District, Sectional and Championship meets on the same weekends as Class 3 and 4. The 2015-16 regular Track and Field season for Troy-Buchanan High School begins with its first track meet on March 26, 2016. Students from Troy Buchanan High School will also compete in the 2015-16 Class 5 Track and Field District Meet on May 14, 2016; Sectional

Meet on May 21, 2016; and Championships at the final site in Jefferson City, Missouri on May 27-28, 2016. For this year, the corresponding Class 1 - 2 Districts will be held on May 7, 2016; Sectionals on May 14, 2016; and Championships at the final site in Jefferson City, Missouri on May 20-21, 2016.

I.   For the 2015-2016 School Year, MSHSAA has 502 schools registered for Boys Track with 488 teams currently registered for District competition as follows. MSHSAA has 506 schools registered for Girls Track with 492 teams registered for District competition as follows:

<table>
<tr><td>Boys Track and Field</td><td></td><td>Girls Track and Field</td><td></td></tr>
<tr><td>Class 1</td><td>138</td><td>Class 1</td><td>139</td></tr>
<tr><td>Class 2</td><td>94</td><td>Class 2</td><td>99</td></tr>
<tr><td>Class 3</td><td>94</td><td>Class 3</td><td>94</td></tr>
<tr><td>Class 4</td><td>91</td><td>Class 4</td><td>96</td></tr>
<tr><td>Class 5</td><td>66</td><td>Class 5</td><td>64</td></tr>
<tr><td></td><td>488</td><td></td><td>492</td></tr>
</table>

J.      During the 2014-15 Track and Field regular season, MSHSAA identified only three (3) students statewide participating in Adaptive events for para-athletes at member schools, including the Plaintiff (Troy High School/Class 5), a male student (Ruskin High School/Class 5) and a male student (Centralia High School/Class 3). Accordingly, during the previous school year, Plaintiff was the only female student in the entire state of Missouri seeking participation in adaptive Track and Field events for para-athletes using racing chairs.[3]

K.      For the 2015-16 Track and Field regular season, MSHSAA has been able to identify to date only seven (7) students statewide seeking participation in Adaptive events for para-athletes at member schools, including Plaintiff (Troy High School/Class 5), a female student (Hazelwood Central/Class 5), a female student (Lutheran South/Class 4), a female student (Perryville/Class 4), a male student (Ruskin High School/Class 5), a male student (Blue Springs/Class 5) and a male student (Centralia High School/Class 3). Accordingly, during the current school year, Plaintiff is one of only four female students for the entire state of Missouri seeking participation in new adaptive Track and Field events for para-athletes, and she is one of only two female students attending a Class 5 school.

L.      In order to establish a credible and fair statewide championships for Adaptive Track and Field events for 25,000 students and over 500 member schools, students with disabilities desiring participation have to be identified and properly prepared to compete, together with numerous and complex issues to discuss and implement statewide with MSHSAA member schools such as coaching education, events, equipment, facilities, competition classification, separate divisions, scoring, advancement, individual and team championships, state records, meet management, etc. This takes time and considerable effort of school administrators to do right statewide.

_____

3 Plaintiff also testified that she knew of no other female high school student in Missouri using a racing chair for school track in her first three years of high school. Plaintiff s father and Athletic Director, Jason Smith, concurred.

_____

M.   This necessary, neutral and orderly process MSHSAA has commenced for Adaptive events for para-athletes is the same process followed in the past for adding Girls' pole vault and the same process MSHSAA is currently in to consider adding Javelin competition in District, Sectional and State Track and Field Championships. This process is also parallel to other MSHSAA Procedures for Initiating Emerging and Provisional Interscholastic Activities to attain full status as a MSHSAA Interscholastic Activity under By-Law 5.2.1.c. with full services (including a State Series); *i.e.*, "Registration of 50 or more schools representing at least 3 Board Districts for a second consecutive year and upon passage of the necessary By Laws to fully integrate the activity into the interscholastic offerings by the membership." (MSHSAA 2015-16 Handbook). Application of such neutral and orderly practices for adding new events for students is essential to properly develop and administer high school District, Sectional and State Championships.

N.   While MSHSAA has been closely monitoring these new Adaptive events for para-athletes, MSHSAA member schools have been free to add other Adaptive events for para-athletes to their regular season competitions. While MSHSAA recommended that regular season competition in the Javelin and new Adaptive events for para-athletes be conducted as non- scoring "exhibitions" during the two-year period of evaluation and development, how these events are scored during the regular season was up to the host school with implied consent from all participating schools. MSHSAA does not mandate to member schools which sports or athletic events they must provide for their students during the regular season. That is a local school decision. In fact, there are many "non traditional" track and field events conducted by schools during the regular season which are not conducted at the MSHSAA District, Sectional and State Championships such as shuttle hurdle relay, shot relay, discuss relay, high jump relay, sprint medley relay and distance medley relay.

O.   The explicit power of the Defendant Board of Directors to organize, direct and administer contests under the MSHSAA Constitution is limited to "such preliminary tournaments, meets or games as necessary to select teams or individuals qualified to compete in state contests" [MSHSAA Handbook].

A summary of reasonable accommodations previously granted to students with disabilities at MSHSAA member schools from August 8, 2012 to February 7, 2015, was received in evidence. These accommodations included relief for cross country and track and field in head to head competition with non-disabled student athletes such as a prosthetic blade for amputee, insulin pumps and fanny packs for diabetic supplies, head covering for alopecia, shadower for autism, guide runner for visually impaired, cold weather ski mask for urticaria and a face mask for severe allergies, among others. This evidence shows that MSHSAA has been responsive to requests for accommodations when reasonable.

## Preliminary Injunction Standard

The applicable standard of review for whether a preliminary injunction should issue were clarified in *Dataphase Systems, Inc. v. C L Systems, Inc*., 640 F.2d 109 (8th Cir. 1981). A district court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest, *Id.*, at 114.  In balancing the equities, "no single factor is determinative" and "if the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a *heavy burden* of demonstrating that he is likely to prevail on the merits," *Id.*, at 113.

A preliminary injunction is an extraordinary remedy, and the moving party bears the burden of proof, *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003). At base, the analysis of these four factors is to be flexible and pragmatic,

but the question is whether, on the balance of equities, so to speak, the harm that justice requires the court to intervene to preserve the status quo until the merits are determined, *Id.* at 113. Plaintiff admits that if a preliminary injunction would grant the movant "substantially the same relief that the movant would obtain after a trial on the merits, the movant bears a very heavy burden" citing *Sanborn Mfg. Co. Inc. v. Campbell Hausfeld/Scott Fetzer Company*, 997 F.2d 484, 489-490 (8th Cir. 1993) [Plaintiff's Motion for Preliminary Injunction ECF No. 61, para. 20]. It is Plaintiff's burden on a Request for Preliminary Injunction--not Defendants' --to prove all necessary elements, including, but not limited to, showing probability of success on the merits, that her requested modifications are reasonable and that Defendants are discriminating unlawfully under either Section 504 or the ADA.

Plaintiff testified that her inability to earn team points "sometimes" makes her feel that she is "not a part of the team" and "excluded." However, in her pending Motion for Preliminary Injunction, Plaintiff alleges that she has participated on the Track and Field team of her high school "throughout her high school career," that she is "an outstanding athlete" and that she is held "to the same standards required of her teammates." While Plaintiff described applause for her as "pity clapping," this Court heard persuasive testimony from Plaintiff, her father and the Athletic Director of her school

great support and admiration from her teammates, all coaches, opposing teams and spectators. Plaintiff testified that she received a lot of "positive reaction actually" from "other teammates and from other schools" while racing in an open lane beside "able-bodied peers" and that she was not aware of any "negative feedback." Plaintiff further testified that her track coach came to a sled hockey game to "support" her and "cheer" for her. Plaintiff's father described his daughter as "tough" and as a "happy kid" with "confidence grown" during her last four years with the TBHS track team. Plaintiff testified that there was only one time, in her 2013 freshman year, that a school rescinded its consent to conduct an event for her at a track meet hosted by the school citing a "safety issue." Plaintiff testified that this never happened again. A preliminary injunction to address one isolated incident in 2013 or one school delay in 2014 over concern with running late into darkness that is neither ongoing nor recurring is not a suitable basis to exercise the injunctive power of this Court.

The Plaintiff alleges in her Amended Complaint that she desires to attend a college that offers scholarship opportunities to para-athletes and that Defendants are allegedly interfering with her "opportunity to vie for athletic scholarships." Courts are generally in accord with *State Ex Rel Missouri State High School Activities Association v. Schoenlaub*, 507 SW2d 354 (Mo. Sup. Ct. En Banc

(1974) that the speculative possibility of obtaining a college athletic scholarship is

not a protected property right justifying judicial intervention.[4]  Plaintiff adduced

_____

[4]*Fla. High School Athletic Assn. v. Melbourne Central Catholic High School*, 867 So.2d 1281, 1288 (Fla. 5th DCA 2004), "the possibility of a scholarship is not a protectable property interest" followed by *Seminole County School Board v. Downey, et al.*, 59 So. 3d 1156 (Fla.App. 5th Dist. 2011); *Jordan ex rel. Edwards v. O'Fallon Two. High Sch. Dist. No. 203 Bd. of Educ.*, 302 Ill.App. 3d 1070, 706 N.E.2d 137 (1999), student had no protected interest in athletic participation, notwithstanding his potential ability to obtain college athletic scholarship; *Kulovitz v. Illinois High School Association*, 462 F. Supp. 875 (N.D. Ill. 1978), student had no Constitutionally protected property right in interscholastic athletics for the chance of obtaining college athletic scholarship; *Kriss v. Brown*, 390 N.E .2d 193 (Ind. Ct. App. 1979), student's scholarship potential not a basis for excusing student from operation of IHSAA rules; *Marino v. Waters*, 220 So. 2d 802 (La. App. 1 Cir., 1969), speculative chance of receiving a college athletic scholar ship was not a property right that would justify interference in LHSAA affairs; *Sanders v. LHSAA*, 242 So. 2d 19, La. App. 3 Cir. (1970), possibility of obtaining a college scholarship was not a pecuniary right which would justify interference in internal affairs of a private association; *Menard v. LHSAA*, 30 So. 3d 790 (La. App. 1 Cir. 2009) *Writ Denied;* 31 So.3d 370 (La. 2010); the possibility of obtaining a college scholarship was not a property interest that would give him a claim his property had been denied without Due Process of law; *Mississippi High School Activities Association v. Farris*, 501 So.2d 393 (1987), neither students' expectations of college baseball scholar ships, nor their interest in participating in interscholastic athletics created a recognized property interest protected by Due Process; *Arendas v. North Carolina High School Athletic Association*, 718 SE2d 198 (N.C. App. 2011), Plaintiffs' allegations of lost reputation, scholarships, job opportunities and college prospects too hypothetical and conjectural to invoke subject matter jurisdiction of court to

no evidence that any actions of the Defendants are, in fact, interfering with any

Case: 16-03179   Filed: ...   Page 13 of 35   Page ID #259

However, this Court notes that Plaintiff is active in extensive racing chair, sled hockey and triathlon competition outside of her school with significant opportunities to compete and display her talent for athletic scholarship consideration in regional and national competitions with para-athletes from other states. The evidence also revealed that Plaintiff has been accepted to four Missouri colleges and is not waiting to hear from any others. She has received academic scholarship offers from two of these colleges. Plaintiff testified that the only college she knows with a racing chair track program is Arizona University, but she has not applied there. Plaintiff has benefited from substantial MSHSAA efforts to expand

---

review claims of "arbitrary and capricious" action by NCHHAA; *Oklahoma High School Activities Association v.* Bray, 321 F.2d 269 (10th Cir 1963) no Federal jurisdiction to intervene on behalf of Plaintiff's desire to exhibit football skills during senior year for potential college athletic scholarship; *Adamek v. Pennsylvania Interscholastic Athletic Ass'n, Inc.,* 57 Pa. Cmwth. Ct. 261, 426 A2d 1206 (1981), no property interest in participation or the possibility of scholarships; *Blue v. University Interscholastic League*, 503 F. Supp. 1030 (N.D. 1980), participation in UIL football playoffs and potential college football scholarships are not liberties or property rights protected by Due Process.

opportunities for para-athletes, including Plaintiff, who will be eligible to appear in a

and Field Championships, including: l00m, 200m, 400m, 800m, l600m, 3200m, shot put, discus and javelin, where individual places and marks will be recorded and medals awarded. Plaintiff testified that she was willing to participate in this special exhibition to "help get the word out". Plaintiff admits in her Motion for Preliminary Injunction that, "To establish the 'threat of irreparable harm,' the movant 'must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" Plaintiff's evidence does not show harm to Plaintiff that is "so great and of such imminence," to show a "clear and present need" for equitable relief. Any harm to Plaintiff is speculative and does not outweigh the harm to Defendants and others caused by the granting of a Preliminary Injunction for the following reasons.

The granting of a Preliminary Injunction will inflict greater harm to MSHSAA, its member schools and other students, including:

> Plaintiff would be afforded unequal and preferential treatment over other students with or without disabilities who are awaiting the same MSHSAA process for the opportunity to participate in the Javelin at MSHSAA District, Sectional and State Championships;

> Plaintiff would be afforded unequal and preferential treatment over other students with or without disabilities who are participating in Emerging Activities with no current access to MSHSAA District, Sectional and State Championships;

> Plaintiff would be afforded unequal and preferential treatment over other students with or without disabilities who are participating in nontraditional track and field events at their school during the regular

Track Championship competition in events such as shuttle hurdle relay, shot relay, discuss relay, high jump relay, sprint medley relay and distance medley relay (See Hearing Exhibit R, Affidavit of Harvey Richards Regarding Plaintiff's Motion for Preliminary Injunction, para. 21);

Plaintiff and her team would be afforded unequal and preferential treatment against teams without para-athletes who will have their accomplishments altered by an unfair and inequitable distribution of points they have no chance to earn without para-athletes. Defendants' evidence included the team rankings for Plaintiff's high school in Girls' Track and Field for the 2013, 2014 and 2015 State Championship track meet. If Plaintiff's team had been advantaged with 40 points from four first place finishes as the only competitor in four (4) events during these State track meets, her team would have been advantaged over teams without para-athletes and elevated from 50th to 5th place in 2013, from 23rd to 3rd place in 2014 and from 34th to 6th place in 2015.

Based on the limited number of students interested in Adaptive events during the 2015-16 Track and Field season and as only one of two female para-athletes with racing chairs in a Class 5 school, Plaintiff and her team would have an unequal and preferential access to succeed in District and State Championship over approximately 25,000 other Missouri students who will be competing in MSHSAA Track and Field competition and over 62 other school teams participating in Class 5 Girls Track without such athletes;

Requiring the Association to create new separate or different Track and Field events for Plaintiff would contravene Official Guidance from the United States Department of Education, Office for Civil Rights since December 13, 2013, creating new administrative and financial burdens, new confusion and uncertainty for the Association and Missouri public school districts who have relied on this official guidance;

The ability of MSHSAA under necessary and neutral procedures for vetting future new events for District, Sectional and Championship competition in Track and Field which are essential to the successful administration of high school sports in Missouri will be significantly altered and undermined;

Mandatory adoption of Plaintiff s demands to create new District,

including creation of new operating standards, new qualifying standards, new point scoring against teams without para-athletes, and new meet management requirements would fundamentally alter the MSHSAA Track and Field program and impose administrative burdens to implement and could not be changed or modified in the future without a Court order;

Defendants and the courts will face increasing litigation demanding Defendants to create, oversee and administer multiple new Adaptive athletic events for students across the full continuum of physical, visual and cognitive disabilities with substantially different rules and procedures, contrary to the official OCR guidance of the US Department of Education, Section 504 and the ADA; and

That if any preliminary injunction issued by this Court is later dissolved, reversed or rescinded, administrative problems of significant magnitude to dissolve, reverse or rescind the results of actions ordered will affect other schools and student athletes.

Because the remedies, procedures and rights under the ADA are the same as under The Rehabilitation Act of 1973, *see* 42 U.S.C. 12133, and because the enabling regulations to be implemented by the Attorney General must be consistent with The Rehabilitation Act, *see* 42 U.S.C. 12134(b), courts construe what constitutes "discrimination" and what are "reasonable modifications" consistent with case law interpreting The Rehabilitation Act of 1973, 29 U.S.C. 794. See *Randolph v. Rogers*, 170 F.3d 850 (8th Cir. 1999) citing *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (citing *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996)); see also *Wooten v. Farmland Foods*, 58 F.3d 382, 385 n. 2 (8th Cir. 1995).

Plaintiff alleges that Defendants excluded Plaintiff from real participation

reasonable modifications to its track and field program." Reasonable accommodations [or modifications] do not require MSHSAA "to lower or to effect substantial modifications of standards to accommodate a handicapped person," *Pottgen v. Missouri State High School Activities Association*, 40 F3d926 at 930 (8th.Cir.1994) citing *Southeastern Community College v. Davis,* 442 U.S. 397, 413 (1979). By definition, accommodations are not "reasonable" if they impose "undue financial and administrative burdens" or if they require a "fundamental alteration in the nature of the program," *Pottgen*, supra at 930, citing *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17 (1987).

Plaintiff's requested modifications would constitute "affirmative action" relief not cognizable under Section 504, *Southwestern Community College*, supra 480 D.S. 273 at 407, 411, or Title II of the ADA to create new operating standards, new qualifying standards, new point scoring and new state championship competition for Plaintiff that does not currently exist.[4]  As recognized by the U.S. Supreme Court in

---

[4] Also see *Anderson v. Univ. of Wis.*, 841 F2d 737 at 740 (7th. Cir. 1988), where a law school was not required to allow an alcoholic student another chance to meet the requisite grade point average; *Doherty v. So. College of Optometry,* 659 F.Supp. 662 (W.D. Tenn. 1987), aff d in part, rev'd in part, 682 F2d 570 (6th Cir. 1988), cert. denied 493 U.S. 810 (1989), where an optometry school

not mean that a Defendant <u>must</u> effect fundamental alterations to its programs.

Plaintiff reiterated that she seeks a Court Order to not only earn team points, but to have those points assessed against teams that don't have any para-athletes in their school or on their team. In *Badgett ex rel. Badgett v. Ala. High Sch. Athletic Ass'n*, No. 2:07-CV-00572-KOB, 2007 WL 2461928 (N.D. Ala. May 3, 2007), the plaintiff sued the Alabama High School Athletic Association ("AHSAA"). In similar fashion here, the AHSAA had begun efforts to increase participation of disabled athletes in sports programs. Similar to Plaintiff here, the plaintiff in *Badgett* was a gifted female athlete competing with a racing wheelchair in track. The District Court found that the AHSAA program included

---

was not required to waive or vary exam requirements to accommodate a student with vision impairment; *Doe v. NYU,* 666 F2d 761, 774-775 (2nd Cir. 1981), where a medical school was not required to allow another chance to student whose emotional illness affected her clinical and academic performance; and *Pandazides v. Va. Bd of Edu.*, 804 F.Supp. 794 (E.D. Va. 1992), where a board of education not required to waive a professional licensing requirement for teachers to pass a communications proficiency test involving an applicant asserting learning disabilities who failed the exam eight (8) times. Also, *Yates v. John Marshall Law Sch.*, No. 08-C-4127, 2009 WL 1309516, at *6 (N.D. Ill. May 11, 2009) (holding law school not required to lower admissions standards to accommodate applicant's disability); *Jackson v. Nw. Univ. Sch. of Law*, No. 10-C-1986, 2010 WL 5174389, at *2 (N.D. Ill. Dec. 15, 2010) ("Neither the ADA nor the Rehabilitation Act requires a law school to alter its acceptance standards as an accommodation for a disabled person."); see also *Herdman v. Univ. of Ill.*, No. 96-c-8025, 1998 WL 774684 (N.D. Ill. Oct. 28, 1998) (Medical school not required under ADA to lower admission standards to accommodate disability).

events requiring "jumping and throwing." The scoring was based on team points awarded to place winners according to the order in which competitors finished an event. Under AHSAA rules, athletes using racing chairs competed in a separate "wheelchair division." Plaintiff in *Badgett* objected to competing in a "separate wheelchair division" and, similar to the Plaintiff here, wanted the points she earned added to her "team" points in the able-bodied division. In rejecting plaintiff's request that her points be counted toward her team's total in the able-bodied division, the Court in *Badgett* reiterated that the AHSAA must be allowed to take fairness into account in setting the rules for scoring of track and field events," *Olmstead*, supra, 527 U.S. 581 at 605. The Court concluded that such scoring would "fundamentally alter the nature of the track and field events in the able-bodied divisions," and that "courts generally have concluded that if a requested accommodation violates the fundamental alteration principle, it is by definition "not reasonable," *PGA Tour, Inc. v. Martin,* 532 U.S. 661 (2001). In rejecting plaintiff's request to have her points added to her team's total in the able-bodied division, the plaintiff was asking the Court to "equate" wheeling with running and jumping despite the fact that wheeling is a "distinct discipline," citing *Bd of Education v. NJSIAA*, supra, 1994 N.J. AGEN LEXIS 1010 at p. 12. ("The 'essential nature' of racing a wheelchair is different from the 'essential nature' of running. They are distinctly different athletic activities."[5]

---

[5] To support her request for preliminary injunction, Plaintiff argues in her

In *McFadden v. Grasmick*, 485 F.Supp.2d 642 (D.Md 2007) the plaintiff
was described as a highly skilled, world class wheelchair racer who sued the
Maryland Public Secondary Schools Athletic Association ("MPSSAA") seeking
federal court relief under Section 504 and the ADA to also have her points
competing against other wheelchair racers added to the team points of her school in
the 2007 Regional and State Track Tournament. [6] In balancing the harm to
Plaintiff against the impact on other students, the District Court recognized the
potential harm to non-disabled students who may have their opportunities
diminished by "unwarranted advantage in the quest for team championships" for
teams with wheelchair racers, 485 F.Supp. 2d at 647. Couched as a "discrimination"
case, the Court in *McFadden* could not find that plaintiff was being treated "less
favorably on account of her disability." The Court focused on three factors: 1)
the MPSSAA's rule for adding new sports or events to Regional and State
Tournaments was not facially discriminatory; 2) wheelchair racers do not
compete against non-wheelchair racers; and 3) all but a small number of teams are

Memorandum [ECF No. 62, para. 37] that the AHSAA had subsequently
implemented a different scoring policy than the one challenged by the plaintiff in
Badgett. However, the Federal District Court stated that it was aware of this
pending change but stated that the AHSAA was free to utilize "either approach
in the future," Badgett Memorandum Opinion at p. 13.

[6] Under the MPSSAA Plan adopted after a Work Group studied and made
recommendations to the Maryland State Board of Education, twelve new
wheelchair racing events (six for girls/six for boys) were added; all racing
would not be separated by class (1A-4A combined); a four-event limit for each
student (similar to the same limit for nondisabled students; and team points for
the competition would not be awarded.

Significantly under-represented in the distinct class of wheelchair student

competitions. The *McFadden* Court agreed with *Badgett,* supra , that "there are

inherent and relevant differences between the class of wheelers and the class of non-

wheelers that education officials are entitled to consider in operating a fair and

equitable system of racing competition designed to identify team rankings." *Id.* at

650 (citing *Badgett*, supra). The Court went on to conclude that the request to earn

points towards a team's point   total simultaneously accepts that wheelchair athletes

are different and therefore entitled to compete only against other wheelchair

athletes while disavowing the reality of that difference in seeking to have their

points count toward the able-bodied competition. *McFadden*, 485 F. Supp. 2d at

651. Ultimately, the *McFadden* Court concluded that it was unlikely the Court

would be persuaded that it is discriminatory under the disability rights statutes for

defendant to maintain a difference in the opportunity of wheelchair racers, in

contrast to non-wheelchair racers, to earn points for teams, where all but a small

number of teams are significantly under-represented in the distinct class of

competitors of which McFadden is the sole member: wheelers," *McFadden*, 485 F.

Supp. 2d at 651. There is no national consensus on qualifying standards or how

to fairly score these Adaptive Events against teams without para-athletes in racing

chairs.  In concluding that the student point scoring requests in both *Badgett*

and *McFadden* would be a fundamental program alteration, the Courts in

*Badgett* and *McFadden* essentially found that any modification to the rules of

play for any sport which alters the manner in which points are scored would

programs. Plaintiff has cited no analogous case law on point under Section 504 or

the ADA supporting the requested modifications to Defendants' point-scoring

system or to have points earned by Plaintiff in separate competition with

wheelchair racers scored against teams without para-athletes who would be

denied the opportunity to equally and fairly compete for the same points.[7]

In *Lue v. Moore*, 43 F.3d 1203 (8th Cir. 1994), the Eighth Circuit rejected

the Section 504 claim of a prison inmate against prison officials for not

providing vocational training suitable for blind inmates. The Court in *Lue* held

that the Rehabilitation Act "does not require the invention of new programs

designed for handicapped individuals," citing *P.C. v. McLaughlin*, 913 F.2d 1033

at 1041 (2d Cir. 1990). The Court in *Lue* also recognized that Section 504 only

ensures "even handed treatment" not "preferential treatment," citing *Travnor v.

Turnage,* 485 U.S. 535, 548 (1988) and *Brennan v. Stewart*, 834 F.2d 1248,

1259-60 (5th Cir. 1988). By comparison, in the employment context it is clear that

the ADA does not require an employer to create a new position to accommodate

an employee with a disability, *Kotwica v. Rose Packing Co*., 637 F.3d 744, 750

---

[7] Plaintiff testified that "sometimes we don't have a mile runner" to score
team points [Hearing Transcript, p. 70]. However, this is a choice to not
enter a runner, not the complete inability to have a runner. School teams
without para-athletes to compete with Plaintiff in a racing chair have no
choice or opportunity to compete for the same points.

7th Cir. 2006) ("The ADA does not impose an obligation on employers to create a

new position ...for individuals with permanent impairments."), following *Watson*

*v. Lithonia Lighting,* 304 F3d 749, 752 (7th Cir. 2002). Courts have stopped

short of requiring public entities to create new programs under Title II. In

*Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 at 603, the Supreme Court

stated, "The State's responsibility, once it provides community based treatment to

qualified persons with disabilities, is not boundless. The reasonable-

modifications regulation speaks of 'reasonable modifications' to avoid

discrimination, and allows States to resist modifications that entail a fundamental

alteration of the States' services and programs.

These cases are consistent with official guidance to the National School

Boards Association by the United States Department of Education Office for

Civil Rights in Washington, DC (herein "USDOE/OCR"). On December 16, 2013,

the USDOE/OCR issued official guidance to the National School Boards

Association to clarify its previous "Dear Colleague" letter dated January 25, 2013,

on Section 504 of the Rehabilitation Act of 1973 and related regulations. This

guidance clarified that "equal access" to existing extracurricular athletic activities

under the law "does not mean… that school districts must create separate or

different activities just for students with disabilities." Moreover, while this

guidance urged school districts to create "additional opportunities for such

the DOE/OCR expressed its official view that a school district is not "required to do so."

MSHSAA Associate Executive Director Harvey Richards met with Plaintiff s father in Columbia, Missouri on October 29, 2014, and met with Plaintiff at her high school in Troy, Missouri on November 25, 2014, to make an individualized inquiry into Plaintiff s interest and requests for Adaptive track events for disabled students. Plaintiff's father testified that Mr. Richards explained the process for exploring Adaptive events for wheelchair racing, that it was a "fantastic meeting" and that he "felt pumped" after talking with Richards. Plaintiff testified that her meeting with Richards was "positive."

Plaintiff and others invited by Plaintiff were afforded the additional opportunity to be heard and participate in further individualized inquiry on Plaintiff's request for modifications at the MSHSAA Board of Directors Meeting on April 10, 2015. The substantial modifications requested by Plaintiff's representatives at this Board Meeting were adapted from the Louisiana High School Athletic Association. TBHS Athletic Director Jason Smith acknowledged how supportive MSHSAA has been in dealing with Plaintiff's situation.

In dismissing Plaintiff s original Complaint, this Court previously found Plaintiff s requested modifications adapted from the Louisiana High

would demand Defendant "materially and fundamentally alter the nature of its Track and Field program." Plaintiff continues her request for this Court to consider and order implementation of the Louisiana rules. This Court previously found that Plaintiff's requested accommodations based on these Louisiana rules would "materially and fundamentally alter" the nature of the MSHSAA Track and Field program in that they would require Defendants to create and mandate statewide (1) six new events for para-athletes, (2) new specifications for racing chair equipment, (3) a new order of events and safety precautions, (4) new qualifying time standards to advance para-athletes, (5) new individual meet scoring system based on participation, (6) new protocol to recognize teams with para-athletes as "Co-Champions," (7) consolidated state competition between para-athletes on the same day when MSHSAA finals are currently held on successive weekends in May and other alterations. While Plaintiff discussed and attached exhibits describing the Louisiana rules and para-athlete rules from eight other states in her Memorandum in Support of her Motion for Preliminary Injunction, Plaintiff's counsel did not offer nor introduce in evidence any of these exhibits or rules from other states.[8] By her Amended Complaint, Plaintiff seeks

---

[8] The Maryland rules [Plaintiff s Memorandum, Exhibit 7] provide for a "Consolidated Team Scoring" (CTS) for 8 events in a "single class" for each gender while MSHSAA currently contests state championships in 5 classes.

modification of the MSHSAA Track and Field program with new court-ordered

"operating standards" for para-athlete racing chair competition adapted from the

"Louisiana High School Athletic Association" or such other operating standards

that the Plaintiff is "open to," and (2) implement new court-ordered "qualifying

standards" for track and field racing chair competitors that do not currently exist to

allow Plaintiff to compete for points for "her track and field team" in "all meets"

sanctioned by Defendants, and (3) afford Plaintiff an opportunity to compete in

new court-ordered racing chair competition which does not currently exist at

MSHSAA District, Sectional and State Track and Field Championship meets

upon meeting said "qualifying standards." By the prayer of her Motion for

Preliminary Injunction, Plaintiff seeks affirmative relief by this Court ordering

Defendants to immediately (1) allow Plaintiff to compete with her team at all

---

Maryland provides a separate championship based on the CTS instead of the integrated team scoring Plaintiff seeks. The Wisconsin rules [Plaintiff s Memorandum, Exhibit 9] do not support Plaintiff s claim where wheelchair athletes compete in a separate wheelchair division divided by gender in six events without the integrated team scoring Plaintiff seeks and regular season competition as "exhibition only." The Ohio rules provide for a separate wheelchair division without the integrated team scoring Plaintiff seeks and will not score a solo competitor. The North Carolina rules pertain to "indoor track" which MSHSAA does not provide and only two events, including a 55m dash and shot put. The Idaho rules also provide that solo competitor events will be "exhibition only." Plaintiff s Memorandum also confirms the advantage of runners over wheelers in shorter distances and the advantage of wheelers over runners in longer distances, making mixed competition unfair and inequitable.

system" whereby Plaintiff may compete for points and contribute to her team's point totals and (3) cease alleged conduct and policies which keep Plaintiff from "competing with non-disabled athletes" on an equal basis. However, Plaintiff adduced no evidence at the hearing on this matter as to what specific "operating standards," what specific "qualifying standards" and what specific "system" Plaintiff wants this Court to order. Moreover, on multiple occasions, Plaintiff's counsel and Plaintiff's witnesses, in response to direct questions from the Court as to what they want the Court to do, failed to articulate and furnish evidentiary support for any such operating standards, qualifying standards or systems. While Plaintiff disavows head to head competition with non-disabled athletes, she seeks to have team points she earns in separate competition assessed against them...a fundamental alteration, *Badgett* and *McFadden*, supra.

By any reasonable definition, such changes in statewide operating standards, qualifying standards, meet scoring system and events offered by Defendants in their post-season District, Sectional and State Championships would constitute a material and fundamental alteration in Defendants' track and field program and existing services which is not required under Section 504 or the ADA, *Pottgen*, supra at 930; *Southeastern Community College,*

*Rodriguez*, supra at 615-616; <u>*Badgett*</u>, supra and *McFadden*, supra at 651. Simply and succinctly put, such alterations are unreasonable as a matter of law and, therefore, Plaintiff has not shown a probability of success on the merits under the ADA or Section 504.

All of Defendants' actions have been supportive and responsive to the needs and interests of all Missouri student athletes participating in their programs, consistent with the law and MSHSAA Constitution, By-Laws and procedures. There is no evidence of discriminatory animus or intent by Defendants or the Association. Moreover, Plaintiff has not shown any probability of alleged discrimination against Plaintiff "solely by reason of her disability" 29 U.S.C. 794(a) nor "by reason of such disability" 42 U.S.C. 12132(2008).

As stated in *U.S. ex rel. Missouri State High School Activities Ass'n,* 682 F.2d 147, 152-153 (8th Cir. 1982): "Schools themselves are by far the better agencies to devise rules and restrictions governing their extracurricular activities, thus judicial intervention in school policy should always be reduced to a minimum," *Clayton School District v. Missouri State High School Activities Association,* Case No.: 4:03cv1634SNL (November 12, 2003). The overwhelming national case law is in accord with *State Ex. Rel. Missouri*

that except in very limited and recognized exceptions, courts should not generally intervene and substitute their judgment in the internal affairs of voluntary high school activity associations like MSHSAA regarding extracurricular athletics and activities.[9] The public interest is not well served by judicial intervention when a state high school activities association is exerting exceptional and sustained efforts to create additional opportunities for disabled athletes in high school track and field.

---

[9] *Robinson v. Illinois High School Association*, 195 NE2d 38 (Ill. 1963), cert. denied 379 U.S. 960 reh. denied 380 U.S. 946; *State Ex. Rel. Indiana High School Athletic Association v. Lawrence Circuit Court*, 240 Ind. 114, 162 NE2d 250, (Ind. Sup. Ct. 1959); *Morrison v. Roberts*, 82 P2d 1023 (Okla. Sup. Ct. 1938); *Tennessee Secondary School Athletic Association v. Cox*, 425 SW2d 597, (Tenn. Sup. Ct. 1968); *State ex. rel. West Virginia Secondary School Activities Commission v. Oakley*, 164 SE2d 775, *(W.* Va. Sup. Ct. 1968); *Marino v. Waters*, 220 So.2d 802, (La. Ct. App. 1969); *David v. Louisiana High School Athletic Association,* 244 So.2d 292, (La. Ct. App. 1971); *Sanders v. Louisiana High School Athletic Association,* 242 So.2d 19 (La. Ct. App. 1970); *Watkins v. Louisiana High School Athletic Association*, 301 So.2d 695 (La. Ct. App. 1974); *Chabert v. Louisiana High School Athletic Association,* 323 So.2d 774 (La. Sup. Ct. 1976); *Midget v. Oklahoma Secondary School Activities Association,* 505 P2d 175 (Ok. Sup. Ct. 1972); *Bruce v. South Carolina High School League*, 258 S.C. 546, 189 SE2d 819 (S.C. Sup. Ct. 1972); *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association*, 453 Pa. 495, 309 A2d 353 (Pa. Sup. Ct. 1973*); Kentucky High School Association v. Hopkins County Board of Education*, 552 SW2d 685 (Ky. Ct. App. 1977); *Crandall v. North Dakota High School Activities Association,* 261 NW2d 921 (N.D. Sup.Ct. 1978);

To be subject to the provisions of Title II of the ADA, a named defendant

must be a "public entity," Section 12132, as described in 42 U.S.C. § 12131(1).

While the Missouri Court of Appeals and Missouri Supreme Court have

recognized that the Association is <u>not</u> an "agency" of the State government, *Art*

*Gaines Baseball Camp, Inc. v. Houston*, 500 S.W.2d 735, 736-737 (Mo. App.

1973) and *State Ex Rel Missouri State High School Activities Association v.*

*Schoenlaub*, 507 SW2d 354, 355 (Mo. Sup. Ct. En Banc 1974), this Court

observes that Plaintiff has elected to sue only the MSHSAA Board of Directors

as the Defendant. The Board of Directors consists of ten (10) members of an

---

*Brown v. Wells*, 228 Minn. 468, 181 NW2d 708 (Mn. Sup. Ct. 1970); *Quimby v.*
*School District No. 21 of Pinal County*, 10 Ariz. App. 69, 455 P2d 1019 (Ariz.
Ct. App. 1969); *Scott v. Kilpatrick,* 237 So.2d 652 (Ala. Sup. Ct. 1970); *Sult v.*
*Gilbert*, 140 Fla 31, 3 So.2d 729 (Fla. Sup. Ct. 1941); *State ex. rel. Ohio High*
*School Athletic Association v. Judges of the Court of Common Pleas,* 173 Ohio
St. 239, 181 NE2d 261 (Ohio Sup. Ct. 1962); *School District of Waterloo v.*
*Green*, 147 NW2d 854 (Ia. Sup. Ct. 1967); *Adamek v. Pennsylvania*
*Interscholastic Athletic Association,* 426 A2d 1206 (Pa. Comm. Ct. 1981);
*Walkerv. Pennsylvania Interscholastic Athletic Association,* 463
A.2d 1198 (Pa. Comm. Ct. 1983); *Braesch v. DePasquale,* 265 NW2d 842 (Neb.
Sup. Ct. 1978); *Cooper v. Oregon School Activities Association,* 629 P2d 386,
52 Or. App. 425 (Or. App. 1981); *Florida High School Activities Association v.*
*Bradshaw,* 369 So.2d 398 Fla. App. 1979); and *Smith v. Crim*, 240 SE2d 884
(Ga. Sup. Ct. 1977).

Administrator group. This Board is composed of individuals, who are not a legal "entity" of any kind and certainly cannot be construed as a "public entity" under the ADA definition above. [10] Accordingly, the current named Defendant Directors are not a "public entity" for ADA purposes. See *Alsbrook v. City of Maumelle, Arkansas*, 184 F.3d 999 at fn 8 (8tl'Cir. 1999), "commissioners may not be sued in their individual capacities directly under the provisions of Title Il. Title II provides disabled individuals redress for discrimination by a 'public entity.'"

Contrary to Plaintiff's claim that MSHSAA is a public entity, also see *Hood v. Ill. High Sch. Ass'n*. 259 Ill.App.3d 1065 (2d Dist. 2005) (holding IHSA is not a "local public entity" for purposes of the Local Governmental and Governmental Employees Tort Immunity Act where, despite overwhelmingly public school membership, private schools play integral part in decision making); also *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453 (6th Cir. 1996) ("The record is far from clear that the Michigan High School Athletic Association could be properly so characterized as a public entity under Title II.").

---

10 Plaintiff's reliance on *Pottgen v. MSHSAA,* 875 F.Supp, 654, 662 (E.D. Mo. 1994) is erroneous legal authority on the public entity and federal financial assistance issues. *Pottgen,* 4:49-CV-0591 CAS, was reversed by the 8th Circuit in *Pottgen v. Missouri State High School Activities Association*, 40 F3d 926 (8th Cir. l994) without deciding either issue, fn. 2 and 5 at 929-930.

Section 504 of The Rehabilitation Act does not cover any program or

activity of an organization unless it can be shown that part of its "program or

activity" receives Federal financial assistance, 29 U.S.C. 794(b).

After the decision in *Grove City College v. Bell*, 465 U.S. 555 (1983),

where the U.S. Supreme Court held that the provisions of Title IX, 20

U.S.C. 1681(a) were subject to "program specific" limitations, Congress

amended The Rehabilitation Act, 29 U.S.C. 794 in 1988 adding subsections (b)

and (c). In *Grove City*, students attending a private liberal arts college received

Basic Educational Opportunity Grants (BEOG's) under 20 U.S.C. 1070a.

While the Supreme Court held that the provisions of Title IX were triggered

by the college's receipt of BEOG's to pay for education, the Supreme Court

limited the reach of Title IX to only the financial aid program within the

college instead of the whole institution. Subsequent cases held that Section 504

was likewise "program specific" since the federal financial assistance language

was identical to the language of Title IX. See for example, *Jacobson v. Delta*

*Airlines, Inc.*, 742 F2d 1202 at 1212 (9th Cir. 1984).

As described in the Affidavit of Harvey Richards, MSHSAA is financed

primarily from gate receipts collected at playoff tournaments. Other income

comes from activity registration fees, registration fees from sports officials,

sales of rule books and other merchandise, royalties from advertisers,

broadcasters and merchandise, membership/service fees, interest, and other miscellaneous revenues. MSHSAA Richards testified that when he was a public school superintendent for five years, no federal funds were used by his school to pay entry or registration fees to MSHSAA or to defray the cost of football uniforms or athletic facilities. Plaintiff's evidence does not show that any part of MSHSAA programs or activities receives Federal financial assistance.

It is incumbent upon Plaintiff to show that "the operations" of MSHSAA, or any part of MSHSAA operations, receive Federal financial assistance. It is not sufficient to show that some MSHSAA member schools receive federal funds for other "operations"; there must be some evidence showing or tending to show that some part of the MSHSAA "operations" receives Federal financial assistance. Whether such assistance is

described as "direct" or "indirect," there must be shown some assistance to

MSHSAA operations from federal funds not enjoyed by the public generally,

and there was no evidence of that adduced by Plaintiff.

## CONCLUSION

As found by the Court in *McFadden*, supra, this Court also finds from

the testimony and evidence that there are inherent and relevant differences

between racing chair events and running events. It is appropriate for

MSHSAA officials to consider these differences in developing and

operating a fair and equitable state-wide system of competition and point

scoring to determine team rankings where all but a small number of schools

have para-athletes in racing chairs. Plaintiff's school is one of only 4 schools

out of 506 in Missouri with such female competitors currently.

Plaintiff seeks a judicial remedy, but, as much as the Court may be able

to empathize with the personal concern of Plaintiff, there is a distinct limitation

on what this Court can mandate as a matter of law. Any modification to

MSHSAA rules which alters operating standards, qualifying standards,

grouping of students for competition, events offered at MSHSAA District,

Sectional and State Championships or the manner in which points are earned

and scored would simultaneously and by definition fundamentally alter the nature of the MSHSAA track and field program. Plaintiff does not seek to "preserve the status quo" but to substantially "change the status quo" by her Motion for Preliminary Injunction.

Balancing the (1) the lack of threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the lack of probability that movant will succeed on the merits; and (4) the public interest, *Dataphase*, 640 F.2d at 114, does not support the issuance of a Preliminary Injunction. The Court will deny the request for Preliminary Injunction for the reasons set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, [Doc. No. 61], is **DENIED**.

Dated this 8th day of April, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE